UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

-----------------------------------------------------------X

BUDGET BOAT TOWING & SALVAGE COMPANY, INC.,

CA 07 349 ML

Plaintiff,

C.A. No.: ________________

-against-

MONTRACHET, LLC, in personam, and M/Y MONTRACHET, her engines, generators, fishing gear, tenders, electronics, interior appointments, appurtenances, *etc.*, in rem,

Defendants.

-----------------------------------------------------------X

**VERIFIED COMPLAINT IN ADMIRALTY**

Plaintiff, BUDGET BOAT TOWING & SALVAGE COMPANY, INC. ("BBT"), by and through its undersigned counsel, hereby files this Verified Complaint against MONTRACHET, LLC, in personam, and the motor yacht MONTRACHET, her engines, generators, fishing gear, tenders, electronics, interior appointments, appurtenances, *etc.*, in rem, and in support of the same alleges the following on information and belief:

**INTRODUCTION**

1. This lawsuit is brought by a professional marine salvage company seeking a salvage award for the services it rendered to a luxury motor yacht.

2. This action also seeks to foreclose a maritime lien in accordance with Rule C of the Supplemental Rules for certain admiralty and maritime claims and the Rules of the United States District Court for the District of Rhode Island.

**JURISDICTION & VENUE**

3. This is a case within the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1333, and is an admiralty or maritime action within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims.

4. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 as plaintiff and defendants are residents of different states and, upon information and belief, the jurisdictional amount exceeds the sum or value of US$75,000.00.

5. This action is governed by the principles of the 1989 International Convention on Salvage as supplemented by the general maritime law of the United States.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) - (3) as well as under the special venue considerations applicable to admiralty actions. *See, e.g.*, Muller Boat Works, Inc. v. Unnamed 52' House Barge, 464 F. Supp. 2d 127, 138 (E.D.N.Y. 2006) (stating "In admiralty and maritime actions, venue lies in any district in which valid service of process could have been made on the defendant.)

**PARTIES**

7. Plaintiff is a corporation organized and existing under the laws of the State of New Jersey and is a professional marine salvor.

8. Defendant Montrachet, LLC is a corporation organized and existing under the laws of the State of Rhode Island.

9. At all times material to this complaint, Montrachet, LLC was and is the owner of the M/Y MONTRACHET.

10. The M/Y MONTRACHET is an approximately seventy-two foot (72') vessel bearing U.S. Coast Guard documentation number 1100573 and identifying Newport, Rhode Island as its homeport. The M/Y MONTRACHET is a luxury motor yacht of fiberglass construction manufactured in 2000. Upon information and belief, the M/Y MONTRACHET currently is and/or will be, during the pendancy of process herein, within the District of Rhode Island and within the jurisdiction of the Court. (A copy of the M/Y MONTRACHET's documentation information is annexed hereto as Exhibit "A".)

**FACTS COMMON TO ALL ALLEGATIONS**

11. On October 22, 2006, the M/Y MONTRACHET was docked at the Brielle Yacht Club Pier located in the Manasquan River in Brielle, New Jersey.

12. To the west (or to the M/Y MONTRACHET's right from the perspective of a person standing on the Brielle Yacht Club's Pier ) is located Hoffman's Marina's fuel dock at which a home-built catamaran-style vessel ("Catamaran") was fueling.

13. At some point, a violent explosion occurred aboard the Catamaran engulfing the Catamaran in flames.

14. Thereafter, and likely due to its dock lines failing in the ensuing fire, the Catamaran drifted free of its berth at the Hoffman's Marina's fuel dock.

15. While fully engulfed in flame, the Catamaran set alight a portion of the pier on which the fuel dock was connected.

16. Subsequently and while fully engulfed in flame, the Catamaran drifted alongside the hull of the M/Y MONTRACHET.

17. No passengers or crew were aboard the M/Y MONTRACHET at the time of the incident and the circumstances placed the M/Y MONTRACHET in a position of extreme marine peril.

18. As part of its routine salvage patrol, BBT learned of and promptly responded to the scene of the explosion and fire aboard its salvage vessel bearing the name "41351-T-2".

19. BBT's salvage vessel was fully equipped, prepared and ready to respond to the instant circumstances and its attending personnel were specifically trained in, among other things, marine firefighting.

20. Upon arriving on scene, BBT observed the M/Y MONTRACHET to be in a position of extreme marine peril.

21. BBT quickly assessed the circumstances, and developed a salvage plan by which to extricate the M/Y MONTRACHET from its position of extreme peril.

22. At great risk to its personnel, vessel and equipment, BBT approached the Catamaran and, ultimately, secured a towing hawser to the Catamaran.

23. BBT thereafter maneuvered the Catamaran free of the M/Y MONTRACHET and extinguished the fire which efforts prevented significant damage and/or the total loss of the M/Y MONTRACET.

24. At the time BBT rendered its services, there were no other resources willing and/or capable of approaching and pulling the burning Catamaran free from the M/Y MONTRACHET's side such that the M/Y MONTRACHET would have been a total loss without BBT's involvement.

25. BBT's efforts were wholly successful and, upon information and belief, the M/Y MONTRACHET suffered only minor damages.

26. Furthermore, BBT's successful efforts prevented a significant pollution event by preventing the discharge of bunker fuel, lube oils, hydraulic oils, gray water, *etc.* which would have occurred had the M/Y MONTRACHET succumbed to the fire.

**COUNT I**

(In Rem Claim For Salvage Award – M/Y MONTRACHET)

27. Plaintiff adopts and realleges the allegations in all of the above paragraphs and further states:

28. The salvage services rendered by BBT resulted in the successful removal of the M/Y MONTRACHET from a position of extreme peril.

29. The salvage services rendered by BBT yielded a useful result to the M/Y MONTRACHET.

30. BBT voluntarily rendered salvage services and had no pre-existing duty or obligation to do so.

31. By virtue of having voluntarily and successfully delivered the M/Y MONTRACHET from a condition of extreme peril, BBT is entitled to a liberal salvage award in an amount not less than $315,000.00.

32. The salvage services rendered by BBT were of the highest order.

33. BBT possesses a maritime lien against the M/Y MONTRACHET for the salvage services it rendered.

**COUNT II**

(In Personam Claim For Salvage Award – Montrachet, LLC)

34. Plaintiff adopts and realleges the allegations in all of the above paragraphs and further states:

35. The salvage services rendered by BBT resulted in the successful removal of the M/Y MONTRACHET from its position of extreme peril.

36. The salvage services rendered by BBT yielded a useful result to the M/Y MONTRACHET.

37. BBT voluntarily rendered salvage services and had no pre-existing duty or obligation to do so.

38. By virtue of having voluntarily and successfully delivered the M/Y MONTRACHET from a condition of extreme peril, BBT is entitled to a liberal salvage award in an amount not less than $315,000.00.

39. The salvage services rendered by BBT were of the highest order.

40. MONTRACHET, LLC, as owner of the M/Y MONTRACHET is liable, in personan, for the salvage services rendered by BBT.

**COUNT III**

(Claim For Equitable Uplift Due to Professional Salvor Status)

41. Plaintiffs adopts and realleges the allegations in all of the above paragraphs and further states:

42. BBT is a professional marine salvage company maintaining vessels and equipment capable of providing marine salvage services and, in fact, provides marine salvage services on a year-round basis. Further, BBT invests significant monies and effort in training its personnel in marine salvage, including, formal instruction on marine firefighting.

43. As a professional marine salvor, and in accord with the general maritime law, BBT seeks an equitable uplift of any award provided herein in an amount not less than ten

percent (10%) of the award. *See, e.g.*, B. V. Bureau Wijsmuller v. United States, 487 F. Supp. 156 (S.D.N.Y. 1979).

**COUNT V**

(Prejudgment Interest)

44. Plaintiff adopts and realleges the allegations in all of the above paragraphs and further states:

45. Plaintiff seeks and is further entitled to prejudgment interest. Virgin Offshore U.S.A., Inc. v. Tex. Crewboats, Inc., 2007 U.S. Dist. LEXIS 41484 * 11 (W.D. La., June 7, 2007) ("In admiralty cases, the award of prejudgment interest from the date of loss is the rule rather than the exception.")

WHEREFORE, Plaintiff prays:

(a) That Plaintiff be awarded a salvage in an amount not less than $315,000.00 as well as an equitable uplift, and prejudgment and post-judgment interest;

(b) That a warrant for the arrest of the M/Y MONTRACHET issue and all persons claiming any interest in said vessel may be cited to appear and answer;

(c) That said salvage claim may be declared to be a valid lien against the vessel M/Y MONTRACHET, her engines, generators, fishing gear, tenders, electronics, interior appointments, appurtenances, *etc.* under and by virtue of the acts of Congress of the United States of America, the general maritime law and the 1989 International Convention on Salvage;

(d) That said lien may be foreclosed and a judgment entered in favor of the Plaintiff and against said vessel and vessel owner for the amount of its indebtedness, with prejudgment and post-judgment interest and costs, and the M/Y MONTRACHET, including her engines,

generators, fishing gear, tenders, electronics, interior appointments, appurtenances, *etc.* be condemned and sold to pay the demands and the claims of the Plaintiff;

(e) That the Plaintiff be provided such other, further and/or different relief as this Honorable Court deems just and appropriate.

Gordon P. Cleary, Esq., #1948
Michael J. Daly, Esq. #6729
VETTER & WHITE
Attorneys for Defendant
20 Washington Place
Providence, RI 02903
(401) 421-3060
(401) 272-6803 [FAX]

Of Counsel:
John K. Fulweiler, Jr., Esq., #FJ-8471 (NY)
DeOrichis, Wiener & Partners, LLP
61 Broadway, 26th Floor
New York, NY 10006-2802
(310) 228-3747 [TEL]; (310) 228-3947 [FAX]
jfulweiler@marinelex.com

Dated: September 14, 2007

**VERIFICATION**

I, Thomas Hurst, hereby declare and state as follows:

I am the owner and an officer of Budget Boat Towing & Salvage, Inc. and have personal knowledge of the herein describe salvage.

I have read the foregoing Verified Complaint and am familiar with the contents thereof, and the same are true to the best of my information and belief.

As for the statements I have made based on information and belief, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Thomas Hurst

Sworn to before me this
15th day of August, 2007

NOTARY PUBLIC

JOANNE E. VENTURO
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Jan. 6, 2010